**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: EDUCATIONAL ASSIGNMENT | ) | |
| OF JOSEPH R., A STUDENT IN THE | ) | |
| MARS AREA SCHOOL DISTRICT, | ) | 2:04-cv-26 |
| Plaintiff, | ) | |
| | ) | |
| J.R. AND K.R., parents and | ) | |
| next friend of J.R., | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pending before the Court are Proposed Findings of Fact and Conclusions of Law filed by both parties (Document Nos. 69, 70), along with memoranda of law in support of their respective positions (Document Nos. 71, 72) and briefs in opposition (Document Nos. 73, 76).  Counsel for Defendants also filed a Memorandum of Law in Response to Findings of Fact and Conclusions of Law (Document No. 74).   The case is ripe for ultimate determination.

Introduction

This case, and two related cases, arose out of the education of J.R., an elementary-age student in the Mars Area School District.  An administrative record was developed throughout the state administrative proceedings and neither party has sought to supplement the record in this Court.  Although this litigation is now over three years old, and has spawned numerous filings by the parties, it is now apparent that the only issue in dispute is very narrow and straightforward. As counsel for the Defendants states, the only issue now before this Court is "Whether School District improperly and unilaterally changed Joseph's educational placement?"   Student's Proposed Findings and Conclusions at 5 & n.11.  The School District frames the issue as "whether a change in the student's educational program constitutes a change in the student's

educational placement."  See School District's Proposed Findings and Conclusions at 9.  This
issue could, and should, have been presented to the Court for disposition in a much more
streamlined and efficient manner.

This case boils down to a matter of statutory interpretation.  The Individuals with
Disabilities Education Act (IDEA), 20 U.S.C. § 1415, contains a "stay put" provision, which
prevents a School District from unilaterally changing a student's "educational placement."  IDEA
Section 1415(j)[1] states in relevant part[2]:

> **(j) Maintenance of current educational placement**
>
> **Except as provided in subsection (k)(4) of this section, during the pendency
> of any proceedings conducted pursuant to this section, unless the State or
> local educational agency and the parents otherwise agree, the child shall
> remain in the then- current educational placement of the child, or, if
> applying for initial admission to a public school, shall, with the consent of the
> parents, be placed in the public school program until all such proceedings
> have been completed.**

The issue in this case is whether the unilateral action of Mars School District in providing special

---

[1]The School District cited to section 1415(e)(3), which does not exist in the current
version of the statute.  The "stay put" provision was contained at section 1415(e)(3) in the
version of IDEA effective prior to June 30, 1998.

[2]*See also* Section 1415(b), which sets forth procedural requirements:

(b)(3) Written prior notice to the parents of the child, in accordance with
subsection (c)(1) of this section, whenever the local educational agency– (A)
proposes to initiate or change; or (B) refuses to initiate or change, — the
identification, evaluation, or **educational placement** of the child, or the provision
of a free appropriate public education to the child.
          * * *
(6) An opportunity for any party to present a complaint--(A) with respect to any
matter relating to the identification, evaluation, or **educational placement** of the
child, or the provision of a free appropriate public education to such child;

education services to J.R. in an inclusion classroom, rather than providing one hour per day in a resource room, constituted a change in the "educational placement" of J.R.  The Court concludes in accordance with precedent from the United States Court of Appeals for the Third Circuit that the unilateral action of the School District did not constitute a change in the "educational placement" of J.R.  Accordingly, the Court will enter judgment in favor of the School District.


**FINDINGS OF FACT**

_____Neither party has moved to supplement the administrative record which was developed throughout the state proceedings (Document No. 3).  Accordingly, the following facts derive from the opinions of the Hearing Officer and/or the Appeals Board  unless otherwise noted.

_____1.	At the time of the events at issue, the student, Joseph, was a fifth grade student in Mars Area School District.

2.	Joseph has been identified as a child with a specific learning disability.

3.	The Individualized Education Plan (IEP) for the third grade (2001-2002 school year) was the last one that was mutually agreed upon by the parents and the school district.  Pursuant to the third grade IEP, Joseph received his education in the regular classroom with learning support in a resource room for one hour per day (or 18% of the school day).  Joseph also received occupational therapy one time per week.

4.	Several IEPs were later developed and the parties met eight or nine times, but the parents did not approve the proposed revisions.  On August 6, 2003, the School District proposed a program to address Joseph's specific learning disability in the

3

areas of reading, mathematics and written expression.  The level of intervention

specified itinerant learning support.

5.      On August 11, 2003, the School District sent Joseph's parents a form letter which

stated that it would be offering inclusion classes to all of its elementary students

beginning in the 2003-2004 school year.   As a result, Joseph would no longer be

provided learning support in a resource room.  Instead, his class would be team-

taught by his regular education teacher and a special education teacher who would

be present in the inclusion classroom for the majority of the school day.

6.      On August 21, 2003, the parents returned, but did not approve, the Notice of

Recommended Educational Placement (NOREP).  By letter dated September 3,

2003, the parents requested a due process hearing alleging that Joseph had been

denied a free appropriate public education (FAPE).

7.      On September 13, 2004, Hearing Officer Donald T. Stauffer presided over a

hearing which the parents attended.[3]  The issues were whether the School

District's unilateral action constituted a change of placement and whether Joseph

had been deprived of a free appropriate public education ("FAPE").  The

transcript of this hearing is contained in the administrative record.

8.      Joseph's fifth-grade teacher, Susan Wingfield, testified that the learning support

teacher was in her class every day from 10:30 to the end of the day.  She also

testified that Joseph was passing all subjects and was making academic progress.

_____

[3]The Hearing Officer had also presided over two earlier hearings involving the same
parties concerning compensatory education and the IEP.

The Director of Special Education for the School District, Susan Cunnup, testified that Joseph continued to receive all the learning support services and occupational therapy services as specified in the third-grade IEP.

9.      Deborah DiPaolo, Joseph's special education teacher, also testified that she had provided special education services to Joseph since third grade, both inside the regular inclusion classroom and in a resource room.  She explained that the resource room was simply a room of resources so that when a classroom teacher would designate a need, the student could come to the resource location to receive services to address that need.  Ms. DiPaolo testified that all services specified in the IEP were continuing to be provided to Joseph during the 2003-2004 school year.

10.     The Hearing Officer found: "There was no evidence presented or testimony that stated that the student was not receiving the needed special education services."

11.     The Hearing Officer rejected the parents' request to continue the resource room from the prior year, noting that the IEP team recommended the regular classroom with itinerant learning support.  The Hearing Officer concluded that the School District had not unilaterally changed Joseph's placement and had not deprived him of a FAPE.

12.     The parents filed timely exceptions and the Appeals Panel reversed the Hearing Officer's determination.  The Appeals Panel concluded that "the District's automatic decision to educate Joseph in an inclusion classroom without proper consideration of his individual special education needs constituted a unilateral

placement which operated to deny him FAPE." Opinion at 3. Notably, the
Appeals Panel did not reject or contradict any of the testimony or factual findings
made by the Hearing Officer at the due process hearing. Instead, the Appeals
Panel stated: "Critically absent from this record is evidence of due consideration
by Joseph's IEP team as to whether placement in an inclusion classroom is
appropriate for him."

13.    Because it concluded that there had been a unilateral change in Joseph's
educational placement, the Appeals Panel awarded compensatory education of one
hour per day for the 2003-2004 school year. The Appeals Panel stated: "Based on
this record, the panel is persuaded that Joseph has not received these special
education services beginning with the first day of school for the 2003-04 school
year."

14.    The Appeals Panel affirmed the Hearing Officer's decision on the second issue,
and agreed that the lack of an agreed-upon IEP for the 2003-2004 school year had
not denied Joseph a FAPE.

15.    The School District filed a timely Petition for Review of the Appeals Panel's
decision in the Commonwealth Court of Pennsylvania.

16.    Defendants filed a timely Notice of Removal to this Court.


**CONCLUSIONS OF LAW**

1.    Standard of Review

The appropriate standard of review, while often complex in IDEA cases, is relatively

6

straight-forward in this matter.  The Court will outline the general standards applicable to IDEA

cases.  However, given the nature of the dispute at issue – the interpretation of a term in a federal

statute – the general IDEA standard of review does not apply.

In IDEA cases, district courts are required to give "due weight" to the factual findings

made during the state administrative proceeding.  *See Carlisle Area School District v. Scott P.*,

62 F.3d 520, 529 (3d Cir. 1995). The district court conducts a "modified de novo" review which

requires it to consider, although not necessarily to accept, the administrative findings of fact. *Id.*

Pennsylvania has a "two-tier" process, in which the Special Education Appeals Panel reviews the

decision of a hearing officer.  The Appeals Panel exercises plenary review, except that it should

defer to the hearing officer's findings based on credibility judgments unless there is some non-

testimonial, extrinsic evidence in the record that would justify, or the entirety of the record would

compel, a contrary conclusion.  *Id.* at 528.  Except for credibility-based factual findings, the

federal courts will defer to the Appeals Panel rather than the hearing officer.  *Id.* at 529.  The

district court should still give "due weight" to the Appeals Panel's decision when the Appeals

Panel overturns a hearing officer's decision based on the nontestimonial evidence of record.  *Id.*

Because the Pennsylvania Special Education Appeals Panel in this case did not point to extrinsic

evidence to overturn credibility determinations made by the hearing officer, the Court should

accord less deference to factual findings made by the Appeals Panel.  *Id.* at 529 n.4 ("We assume

without deciding that, under IDEA, a district court should accord somewhat less consideration to

an appeals panel ruling that disregards a hearing officer's credibility judgments where [extrinsic

evidence does not support a conclusion other than that made by the hearing officer]").[4]

In any event, the appropriate standard of review is determined by the nature of the disputed ruling.  *Id.* at 530.  As explained above, the disputed ruling in this case concerns the interpretation of the IDEA statutory term "educational placement."  The Appeals Panel did not overturn or vacate any of the factual findings made by the hearing officer.  Instead, the Appeals Panel made a legal determination that the School District's unilateral conduct constituted a change in "educational placement."  This Court will not defer to the Appeals Panel on matters related to the legal interpretation of a federal statute, insofar as this Court is bound by Third Circuit precedent.  *See Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495-96 (9th Cir.1997)(review of state agency's interpretation of federal statute is de novo and without deference); *Huss v. Greenspring Health Services, Inc.*, 1999 WL 225885 *5 (E.D. Pa. 1999) (district court is bound by Third Circuit interpretation of federal statute while opinion of Pennsylvania Supreme Court is merely persuasive).  Accordingly, the Court will accept the factual findings made during the state adminstrative proceedings but will apply a de novo review to the legal interpretation of the statute as made by the Appeals Panel.

2.	The Issue Before the Court

The only issue in this case is whether the unilateral action of the School District in providing Joseph with special education services in the inclusion classroom, as opposed to one hour per day in a special education resource room, constitutes a change in "educational placement."  If so, under the "stay-put" provision of the IDEA, 20 U.S.C. § 1415(j), Joseph must

_____

[4]Defense counsel cited *Carlisle* for the proposition that in jurisdictions having a two-tier administrative procedure, the court gives due deference to the second tier, see Memorandum of Law at 11.  However, counsel failed to disclose the important distinction made in the footnote.

have remained in the then-current educational placement during the pendency of the proceedings set forth in the IDEA and the School District would not have been entitled to unilaterally change Joseph's special education services from the resource room to the inclusion classroom.

       3.     Third Circuit Precedent

      The Court of Appeals for the Third Circuit addressed a very similar issue in *DeLeon v. Susquehanna Community School District*, 747 F.2d 149 (3d Cir. 1984). In *DeLeon*, the issue before the Court was whether a change in treatment of a handicapped child – by transporting the child to school with other children rather than paying his parents to transport him in their own car – constituted a change in "educational placement." In a thorough opinion, Judge Becker instructed courts to "focus on the importance of the particular modification involved." *Id.* at 153. The Court explained:

> It is clear that the "stay put" provision does not entitle parents to the right to demand a hearing before a minor decision alters the school day of their children. The touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience. In some areas it may be possible to draw bright lines: for instance, replacing one teacher or aide with another should not require a hearing before the change is made. On the other hand, there are areas where such bright lines will be impossible to draw.

*Id.* at 153-54. In *DeLeon*, the Court held as a matter of law that the change in transportation did not constitute a change in "educational placement," even though the student was transported by a stranger rather than a parent, transported with other children rather than alone, and there was a ten minute increase in daily transit time. In addition, the parents offered the affidavit of Dr. Freda Brown, a specialist in the education of severely and profoundly impaired children, who opined that lengthy travel would have a debilitating effect on the student's ability to benefit from his education. The Court concluded that Dr. Brown's affidavit did not defeat summary judgment

because it did not indicate that the *changes* would have a substantial, detrimental impact on the student's education.  *Id.* at 154 (emphasis in original).  In summary, the Third Circuit requires a real, substantive change in the student's education to constitute a change in "educational placement" such that the due process duties of the IDEA would be triggered.

The record in this case is far less substantial than that found to be insufficient in *DeLeon*. There has been no affidavit from a specialist as to any impact on the student's education.  There has been no change comparable to the transportation change made in *DeLeon*.   The record reflects that the importance of the modification involved is minor and insignificant.  Indeed, the decision at issue falls squarely into the category of a "minor decision that alters the school day" which the Third Circuit has held to not be a change in "educational placement."  There has certainly been no evidence that the move to an inclusion classroom was likely to affect Joseph's learning experience in any "significant way."  As noted above, this Court is bound by Third Circuit precedent and the holding in *DeLeon* is dispositive of the issue in this case.

In *J.S. v. Lenape Regional High School District Board of Educ.*, 102 F. Supp.2d 540 (D.N.J. 2000) (arising in the context of a claim for counsel fees), a disabled student was moved from a special education class at one high school to a similar class at another school within the same district.  The program at one school was more flexible and the demographics of the student population was also different.  The parents' choice was supported by an independent psychologist.  The Court recognized that under the framework provided by *DeLeon*, "only matters that will significantly impact the child's learning should be considered a change in educational placement for the purposes of the IDEA."  *Id.* at 544.  The Court held that the change in schools did not constitute a change in "educational placement."  It commented that the

10

psychologist's report focused on demographics rather than curricular content or educational enhancements and concluded that the parents had failed to show that the student would have been exposed to a substantially different educational environment.  Similarly, Joseph's parents have failed to show that he would be exposed to a substantially different educational environment.

    4.    Defendants' Proposed Interpretation of the Term "Educational Placement"

Defendants argue that the term "educational placement" is synonymous with the term "least restrictive environment" or "LRE."  Succinctly stated, Defendants contend that a child's educational placement changes any time there is movement on the continuum of available educational alternatives.  See, e.g., Defendants' Memorandum of Law at 15.  Defendants further contend that the change from a resource room to an inclusion classroom represented movement on the LRE continuum, and therefore, that there was a change in "educational placement."

The Court does not agree with Defendants' reasoning.  Initially, the terms "educational placement" and "least restrictive environment" are not synonymous.  The statute simply does not say what Defendants contend it says.  Congress could easily have provided that the "stay put" provisions are triggered by any change in the LRE continuum, but it did not do so.  Moreover, schools are encouraged under the IDEA to affirmatively place students in an LRE "to the maximum extent appropriate."[5]  Defendants' proposed statutory construction, by requiring a

---

     [5]IDEA, 20 U.S.C. § 1412(a)(5)(A), states: "To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."

school to obtain prior parental approval or risk violation of FAPE, would certainly frustrate the efforts of schools to place students in the least restrictive environment.  Simply stated, the IDEA encourages schools to move students to a LRE, and Mars' efforts to do so with Joseph should not be construed as a violation of the statute.

The very cases cited by Defendants in their brief undermine their position.  In *Concerned Parents and Citizens v. New York Board of Educ.*, 629 F.2d 751 (2d Cir. 1980), the school district had transferred special education students from one building, in which the special education students comprised a majority and received an "extremely innovative educational program," to other buildings in the district, in which they were then a minority.  Nevertheless, the Second Circuit held that the action of the school district did ***not*** constitute a change in "educational placement" which would trigger due process duties, even though the classes in the new schools varied in some respects from the unusual program available at the former school. *Id.* at 756.  The Court construed the term "educational placement" to refer "only to the general educational program in which the handicapped child is placed and not to all the various adjustments in that program that the educational agency, in the traditional exercise of its discretion, may determine to be necessary." *Id.*  Further, the Court noted that the school's efforts to place the students into more of an inclusive, mainstream environment, similar to the action taken by Mars in this case, may actually have furthered the goals of IDEA. *Id.* n.6.

In *White v. Ascension Parish School Board*, 343 F.3d 373, 379 (5th Cir. 2003), the Court addressed a mirror-image of this case, in which the parents sought to require the school district to place their deaf child in a mainstream classroom in a neighborhood school.  The Court held that

12

the parents did not have a right under the IDEA to participate in site selection, because the term "educational placement" referred not to a place, but to a program of services. In this case, the record reflects that the School District is offering essentially the same program of services in a different place – the inclusion classroom. All of the services in Joseph's IEP continued to be provided on a daily basis, including his special education teacher who remained the same. This change is far more minimal than that involved in *Concerned Parents* and *White*, and is a type of change that is affirmatively encouraged by the overall philosophy expressed in the IDEA.

       5.      Errors in the Appeals Panel's Reasoning.

       The Appeals Panel issued Special Education Opinion No. 1423 on November 23, 2003, in which it recognized that *DeLeon* and *J.S. v. Lenape* address the question of what constitutes a unilateral change in "educational placement" under the IDEA. Opinion at 3. The Appeals Panel also recognized that "the focus must be on whether a particular modification affects the child's education in a significant way." *Id. (citing DeLeon).* However, the Appeals Panel failed to properly apply this test.

       As explained above, there must be a significant impact on the substance of a student's education. The Appeals Panel pointed only to procedural shortcomings. Specifically, the Appeals Panel criticized the School District for its "method of making a change to Joseph's educational programming" and the parents' lack of information about the services he received. Indeed, the Appeals Panel stated: "The mere presence of special education services within the new classroom is insufficient." *Id.* Thus, the Appeals Panel found a unilateral change in placement due to the District's decision-making process "[r]egardless of the District's efforts to fit Joseph and his needs into this classroom setting." *Id.* For the reasons explained above, this

13

standard is inconsistent with *DeLeon*.

6.      Conclusion

In this case, the facts are largely undisputed and the legal issue is readily apparent.  The School District provided the same educational services to Joseph on a daily basis, with the same special education teacher, but in a different room.  Rather, than spending one hour per day outside of the regular classroom in a special education resource room, Joseph remained in an inclusion classroom for the entire school day.  The special education teacher joined him in the classroom for the majority of the day.  Under *DeLeon*, this minor change in location does not generate the type of significant, substantive impact on Joseph's education which would be necessary to constitute a change in "educational placement" such as to constitute a violation of the IDEA's "stay put" provision.  Accordingly, the Court will enter judgment in favor of the Plaintiff, Mars Area School District, and against Defendants.


SO ORDERED this 4th day of May, 2007.


BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge


cc:     Thomas E. Breth, Esquire
        Email: tbreth@dmkcg-law.com

        Eugene A. Lincoln, Esquire
        Email: elincoln@concentric.net